UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-CV-81371-RLR/BER

JAMES E. GOETZ, et al.,

            Plaintiffs,

vs.

U.S. FOOD AND DRUG ADMINISTRATION,

            Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 56]

Plaintiffs brought this action under the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, to compel the U.S. Food and Drug Administration (FDA) to produce certain agency documents regarding a study the FDA sponsored that was published in the Journal of the American Medical Association (JAMA) on June 28, 2021.  The study, entitled "Effect of Oral Ranitidine on Urinary Excretion of N-Nitrosodimethylamine (NDMA)," focused on the antacid medication, Zantac (ranitidine), which the FDA recalled in April 2020 because it contained unsafe levels of a probable human carcinogen, NDMA.  ECF No. 1 at ¶ 1.

In the underlying California JCCP litigation, Plaintiffs sought documents related to the FDA-sponsored study.  Specifically, Plaintiffs submitted a FOIA request to the FDA, seeking the agency's emails and other communications during a three-year period related to the ranitidine study, as well as initial drafts of the study

manuscript. *See* FDA's Statement of Undisputed Material Facts (SOF) (ECF No. 57) at ¶ 1. The FDA eventually began producing nonexempt responsive documents, however, it withheld or redacted some documents claiming that the documents (or portions thereof) were protected by a FOIA exemption. With the instant action Plaintiffs allege, *inter alia,* the Wrongful Withholding of Documents under Section 552.

Following a status conference on September 18, 2023, I ordered the parties to select ten documents withheld or redacted by the FDA for an *in camera* review. ECF No. 49. The FDA separates the ten challenged documents into two categories: "Internal Working Papers" and "Internal Emails." As set forth in the FDA's *Vaughn* Index, there are eight documents classified as "Internal Working Papers" – they consist of non-final versions of the ranitidine study manuscript, figures, and protocol synopsis as well as internal emails between FDA employees regarding the same; the remaining two documents are classified by the FDA as "Internal Emails" – these are employee communications regarding whether to conduct the ranitidine study under an investigational new drug (IND) application.[1]

---

[1] A *Vaughn* Index is akin to a privilege log. The FDA's second revised *Vaughn* index (ECF No. 61-1) lists the Bates number and provides a description of the withheld document, as well as the recipients, and the claimed FOIA exemption. I will refer to the Bates-stamped documents listed in the second revised *Vaughn* Index by the last three or four digits.

Plaintiffs use a different method of classifying the documents, separating the ten challenged documents into two categories: "drafts" and "emails." ECF No. 58 at 11. Plaintiffs' categorization is not entirely accurate. For example, the documents at Bates No. 5608-5617 are not emails (although Plaintiffs classify them as such); they are a redlined version of the draft study that contain substantive comments by FDA

Presently before me is the FDA's motion which seeks a determination that its partial or full withholding of the ten records under FOIA Exemption 5 was proper.[2]

## LEGAL STANDARDS

*1. FOIA's Purpose and Exemption 5*

"The purpose of FOIA is to encourage public disclosure of information so citizens may understand what their government is doing." *Office of Capital Collateral Counsel, N. Region of Fla. ex rel. Mordenti v. U.S. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003). Accordingly, government records "are presumed to be subject to disclosure unless" Defendant "affirmatively establishes that the requested records fall into one of FOIA's exemptions." *Id.*, 331 F.3d at 802. Moreover, under the FOIA Improvement Act of 2016, an agency may only withhold information under a FOIA exemption if it "reasonably foresees that disclosure would harm an interest protected by an exemption[,]" or if "disclosure is prohibited by law[.]" *Campaign Legal Ctr. v. United States Dep't of Just.*, 34 F.4th 14, 19 (D.C. Cir. 2022) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

Exemption 5, as set forth in section 552(b)(5) of FOIA, protects from FOIA disclosure any "inter-agency or intra-agency memorandums or letters which would

---

employees. I find the documents are best categorized by the two distinct subject matters at issue: the JAMA publication and the use of an IND application. Thus, I adopt the categories used by the FDA.

[2] The FDA's second revised *Vaughn* index (ECF No. 61-1) lists FOIA Exemption 5 as the basis for withholding (in part or in full) all ten disputed documents. The index also lists Exemption 4 as the basis for redactions to one of the documents, but Plaintiffs state in their response papers that they do not challenge this Exemption 4 redaction. ECF No. 58 at n.7.

not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5, also known as the "deliberative process privilege," "incorporates into FOIA the statutory and common law privileges normally available to a party in civil discovery." *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1257 (11th Cir. 2008). "Stated simply, [a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work product, executive privilege) are protected from disclosure under Exemption 5." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004). Exemption 5 protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, (1975)).

To fall within Exemption 5's deliberative process privilege, "a document must be both 'predecisional' and 'deliberative.'" *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1277 (citation omitted). To be predecisional, information must be "prepared in order to assist an agency decision-maker in arriving at his decision," it must be generated before the adoption of an agency policy or decision, and "the record must bear on the formulation or exercise of policy-oriented judgment." *Scott v. Internal Revenue Serv.*, No. 18-CV-81742, 2021 WL 256417, at *16 (S.D. Fla. Jan. 26, 2021) (quoting *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1277-78).

A document is considered deliberative if it makes recommendations or expresses opinions on legal or policy matters. *Scott,* 2021 WL 256417 at *17 (citing *Miccosukee Tribe,* 516 F.3d at 1263). Deliberative documents "include recommendations, draft documents . . . and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1277 (citing *Florida House of Rep. v. U.S. Dep't of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992)). In the Eleventh Circuit, "[t]he only inquiry that should be made in deciding whether something should be denoted opinion, and hence deliberative, is: Does the information reflect the give-and-take of the consultive process?" *Florida House*, 961 F.2d at 949. As other courts have noted, case law in this area is "of limited help because the deliberative process privilege is so dependent upon the individual document and the role it plays in the [particular] administrative process." *Scott,* 2021 WL 256417 at *17 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

2. *Summary Judgment Standard in FOIA Cases*

FOIA cases are usually decided on motions for summary judgment. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation and

5

internal quotations omitted). Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting declarations if they are "relatively detailed and nonconclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and when they describe the justifications for nondisclosure "with reasonably specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (as quoted in *Scott*, 2021 WL 256417, at *4).

Courts must view the facts in the light most favorable to the FOIA requester in determining whether the government agency has met its burden. *Id.* (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). Courts must determine whether the agency had an "adequate factual basis" for invoking the exemptions, which can be established "through affidavits, a *Vaughn* Index, *in camera* review, or through a combination of these methods." *Miccosukee Tribe*, 516 F.3d at 1258.

## DISCUSSION

### 1. The Internal Working Papers

The FDA contends that the Internal Working Papers are predecisional because they were circulated prior to the FDA's decision to publish the full article on the ranitidine study in JAMA in June 2021. ECF No. 56 at 12; ECF No. 61 at 2-3. According to the FDA, the Internal Working Papers reflect FDA employees' comments and suggestions regarding what should appear in the final article on the ranitidine study. ECF No. 61 at 3. Given that these drafts and emails predate the JAMA

publication and were circulated for the specific purpose of obtaining "comments" and "feedback from the team" about the publication (*see* emails Bates No. 300, 448, 647), it is self-evident that they do not reflect the FDA's final decision on what the publication would include. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, (2021) ("courts must consider whether the agency treats the document as its final view on the matter" or whether the document "leaves agency decisionmakers 'free to change their minds,'" which indicates it is not the agency's final decision) (citation omitted). Accordingly, I find that that the Internal Working Papers are predecisional and reject Plaintiffs' argument to the contrary.

Likewise, I reject Plaintiffs' argument that the withheld Internal Working Papers are not deliberative because they are "primarily factual, scientific . . . technical and facilitative." ECF No. 58 at 14. Plaintiffs contend that "the documents are about the best way to present the study's factual and scientific findings" and that they do not involve agency legal analysis or policy decisionmaking, so they are not deliberative. *Id.* at 15-16. This narrow view ignores the fact that how a study is presented to the public and what data is included in the publication directly impacts how that information will be received, what conclusions will be drawn, and what actions will be taken. The FDA's internal deliberations about what to include in the publication of the ranitidine study and how to present the data were important steps in the FDA's process. Having assessed the substance of these internal deliberations during my *in camera* review, I find that these decisions were not merely "technical" or "facilitative."

7

Of course, as the FDA concedes, some of the withheld documents contain factual information, but I agree with the FDA that "[a]ny effort to segregate the factual portions of the drafts, as distinct from their deliberative portions, would run the risk of revealing editorial judgments." ECF No. 56 at 16 (quoting *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120, 132 (D.D.C.). *See also* Second Declaration of Elizabeth Jungman (ECF No. 56-1) at ¶ 21 (the "editorial judgments" in the Internal Working Papers are "inextricably intertwined with the factual information").

By way of example, the *Vaughn* Index states that for the documents Bates No. 9519-9523, "the withheld information contains draft figures that are different from the final figures published in JAMA." ECF No. 61-1 at 1. I agree with the FDA that if it were to "disclose any portion of the non-final versions of the ranitidine study manuscript, figures, and/or protocol synopsis, Plaintiffs could easily compare the final versions, which are publicly available . . . with earlier versions to discern the changes that FDA made during the drafting process. This comparison of final and non-final versions could 'reveal judgments made during the drafting process itself.'" ECF No. 56 at 17 (quoting *Competitive Enter. Inst.*, 161 F. Supp. 3d at 132). This applies to the documents at Bates No. 450-490, 6155-6164, 3260-3359, and 5608-5617, which are red-lined versions of the manuscript and thus, they reveal non-final edits prior to publication. Likewise, the information withheld from the documents Bates No. 9714-9723 and 3260-3359 conveys the opinions and comments of FDA employees about what specific information they believed to be a "key issue" and "critical to

8

communicate" in the publication, including suggestions of what "actions to take." ECF No. 61-1 at 3.

Even viewed in the light most favorable to Plaintiffs, I find that the FDA has met its burden because the withheld Internal Working Papers consist of draft manuscripts that had not yet been published and were still being revised, as well as email communications about these drafts which reveal opinions and suggestions by FDA employees. Thus, these documents are inherently deliberative because they contain mental impressions and advice. *See Scott*, 2021 WL 256418, at *28.

I further find that the FDA's decision to withhold these documents was proper under the FOIA Improvement Act of 2016. One interest that FOIA's Exemption 5 protects is the free exchange of ideas and suggestions "to fully flesh out the reasons for and against potential agency actions before they are taken." *Campaign Legal Ctr.*, 34 F.4th at 23 (citing *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). The deliberative process privilege ensures "that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism[.]" *Campaign Legal Ctr.* 34 F.4th at 23 (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). "The privilege also shields policymakers from premature disclosure of their proposals before they have been completed or adopted, promoting full and robust consideration of agency options." *Campaign Legal Ctr.* 34 F.4th at 23 (citation and internal quotations omitted).

9

Here, the FDA properly determined that the challenged documents should be withheld because it was reasonably foreseeable that release of the documents "would chill the free exchange of ideas within the Agency and harm the integrity of the decision-making process during the design of scientific studies, analysis and evaluation of study data, formulation of conclusions based on study results, preparation of draft manuscripts, and consideration of scientific-policy issues." ECF No. 56 at 18 (citing Second Declaration of Elizabeth Jungman at ¶¶ 22–23). Further harm could be caused by "subjecting FDA employees to public scrutiny about their personal views that may not reflect the Agency's official position on certain matters." *Id.* at ¶ 24. Given that the promotion of frank and candid discussion is an interest protected by FOIA Exemption 5, the FDA properly withheld the Internal Working Papers from disclosure to Plaintiffs.

2. *The Internal Emails*

The FDA contends that the Internal Emails are predecisional because they were circulated in April 2020, before the ranitidine study commenced in June 2020. ECF No. 56 at 12. According to the FDA, it "did not make a final determination whether and in what form to conduct the ranitidine study until the study began in June 2020." ECF No. 61 at 8 (citations and internal quotations omitted). My *in camera* review of the documents at Bates No. 9712-9713 and 9702-9706 supports the FDA's position and reveals that discussions regarding how the study would be conducted were ongoing in April 2020, and so the documents at issue are predecisional.

10

These internal emails are also deliberative because they contain candid discussions about the appropriateness of conducting the study under an IND application. These emails logically fall within the parameters of FOIA's Exemption 5 because they contain personal opinions of FDA employees and they "reflect the give-and-take of the consultive process." *Florida House*, 961 F.2d at 94. For these same reasons, the Internal Emails were properly withheld under the FOIA Improvement Act of 2016, because to disclose them would be "likely to endanger candid discussion within the agency." *Campaign Legal Ctr.*, 34 F.4th at 28 (citation and internal quotations omitted).

## RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the District Court GRANT the FDA's Motion for Partial Summary Judgment (ECF No. 56) and find that it properly redacted and/or withheld the ten documents submitted for *in camera* review under FOIA Exemption 5.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 18th day of December 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE